LABORDE, Judge.
In this paternity suit, plaintiff, Roxanne Marie Callahan, individually and as tutrix of her minor son, Shawn Anthony Landry, filed suit to have the defendant, Kevin Landry, declared the natural father of her minor child and to seek alimony for support of the child. The trial court found the defendant to be the natural father of her minor child and awarded plaintiff $250.00 per month in child support plus $1,923.70 for medical expenses incurred for the pregnancy and birth of the child. Defendant appeals. We affirm.
The plaintiff and defendant first met at a lounge operated by plaintiff’s mother in Kaplan, Louisiana, in August, 1977. The parties began seeing each other and eventually developed a sexual relationship. During their relationship, the parties engaged in sexual intercourse approximately twenty to thirty times. The last act of intercourse occurred on or about June 10, 1978. In July, 1978, the defendant broke off the relationship after the plaintiff informed him of her pregnancy.
On March 4,1979, the plaintiff gave birth to a baby boy. The child was a full term baby, there having been no complications *783 during the pregnancy. Dr. Carl Richard who treated plaintiff during her pregnancy estimated the date of conception as on or about June 10, 1978.
Two sets of blood tests were performed on the plaintiff, the defendant and the minor child.[1] The first set of tests performed by Dr. Corbett LeBouef of Abbeville, Louisiana, did not exclude the possibility that the defendant is the natural father of the child. However, the tests were unable to give any percentage of probability that the defendant is the natural father of the child.
The second set of tests were performed by Dr. Leslie Ray Bryant, an expert in immunohematology, at Southern Baptist Hospital in New Orleans, Louisiana. The tests performed by Dr. Bryant were much more sophisticated. They were able to give the percentage of probability that the defendant is the natural father of the child. Dr. Bryant concluded that the probability of the defendant being the natural father of the child is 99.06 percent.
The preponderance of the evidence is clear that the defendant is the natural father of the child. However, the defendant seeks to defeat paternity by showing that the plaintiff is a “woman of dissolute manners” under LSA-C.C. Art. 210.[2]
LSA-C.C. Art. 210 states:
“The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child.”
In Succession of Washington, 308 So.2d 892 (La.App.2nd Cir. 1974), the court commented on the construction of LSA-C.C. Art. 210 stating:
“Defendants argue that the article imposes a more stringent standard of proof in paternity cases if the mother has had an illicit relation with a man other than the alleged father. But an unstrained reading indicates that it is only a statutory restriction of the weight to be given by the courts to a certain class of evidence. In essence, it prohibits a judicial determination of paternity based solely on proof of cohabitation and the testimony of the mother, if she has been promiscuous. It is not a punitive measure designed to make proof of paternal descent generally more difficult for indiscriminate mothers and their children by increasing the burden of proof beyond a preponderance of the evidence. Instead it merely displays a legislative distrust of the oath-plus-cohabitation evidence by declaring that conclusive weight cannot be given to it standing alone. Cf. McConkey v. Pinto, 305 So.2d 469 (La.Sup.Ct.1975); Ogborn v. Bush, 255 So.2d 199 (La.App., 4th Cir. 1972).”
In support of his contention, the defendant brought forth several witnesses who claimed to have had sexual intercourse with the plaintiff. The record reflects that these witnesses were impeached by either the admission of prior inconsistent written statements in which they had previously denied ever having had intercourse with the plaintiff or by admissions on the stand that they were simply testifying to acts of intercourse with the plaintiff to aid the defendant. The trial judge correctly gave little weight to such testimony.
The only other sexual activity of the plaintiff proven at trial occurred prior to her relationship with the defendant. At the age of sixteen, plaintiff began dating a boy her own age. This relationship lasted *784 about a year from July, 1976 to July, 1977 and during that time they had intercourse about twenty to twenty-five times.
This one prior relationship is not sufficient to establish that plaintiff is a woman of dissolute manners. To do so, the defendant must show the plaintiff is “loose from restraint; especially loose in morals and conduct; debauched.” Bertrand v. Warren, 326 So.2d 505 (La.App. 3rd Cir. 1976). The defendant has not shown that plaintiff possesses these character traits.
For the above and foregoing reasons the decision of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. The effect of blood tests in a paternity suit is governed by LSA-R.S. 9:397.2. Where the blood tests show the possibility of the alleged father’s paternity, the admission of the evidence is within the discretion of the court, depending upon the infrequency of the blood type.

. Act 549 of the 1980 Regular Session of the Louisiana Legislature repealed LSA-C.C. Art. 210 effective as of July 23, 1980. The trial court rendered judgment on July 9, 1980.